IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARA GOVACHINI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1433 |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

O R D E R

AND NOW, this 23rd day of September, 2020, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh

the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff argues that the Administrative Law Judge ("ALJ") failed to include limitations accounting for her need for a supported work environment in formulating her residual functional capacity ("RFC"). She asserts that all of her examining psychologists had opined to the need for such a limitation and that the ALJ improperly rejected their collective opinion. The Court disagrees and instead finds that substantial evidence supports the ALJ's findings regarding Plaintiff's RFC and her ultimate determination that Plaintiff is not disabled.

Plaintiff's argument is premised on her claim that "*every* expert who has ever examined Plaintiff has opined that she requires significant support." Doc. No. 10 at p. 7 (emphasis in original). However, this does not accurately describe the complex record before the ALJ in this case. First, it is not accurate to claim that all of the examining sources opined that Plaintiff required a provision in her RFC limiting her to a "supported" work environment. Arguably James Petrick, Ph.D., did so, as he stated that Plaintiff was substantially limited in her ability to maintain competitive employment and that she likely required "a benevolent employer" and "necessary accommodations." (R. 307-12). In addition, Jessica Kettel, M.D., and Lindsey Rose, LCSW, both completed identical checkbox forms that included a box indicating that Plaintiff's maximum capacity would be working part-time with the assistance of a job coach. (R. 834-35, 851-52). However, consultative examining source Steven Pacella, Ph.D., while he did find that Plaintiff had several marked limitations, did not opine specifically that she required a particular type of supported work setting. (R. 295-303). Likewise, Christy Emmons, Psy.D., offered a number of recommendations designed to benefit Plaintiff with learning, socialization, and behavior, but did not opine that she was limited to working in a specially supported environment. (R. 314-20). Dr. Emmons, in fact, stated that while Plaintiff would benefit from job coaching, she "will be able to participate in gainful employment," and noted that the things that would help her be most successful were, not necessarily intensive supervision, but rather a consistent work routine and the opportunity to rehearse work skills. (R. 318). School psychologist Rachel Flinner, M.S., Ed., reviewed the records of Drs. Petrick and Emmons in determining whether Plaintiff was eligible for services available to individuals with autism spectrum disorder. (R. 827-30). She was not opining as to Plaintiff's ability to work and did not state that she requires a special support system to perform gainful work.

It is far more accurate, then, to say that the record contains a number of opinions that have relevance to Plaintiff's functional capacity, including her possible need to work in a supportive environment, which are not in strict agreement and which, in fact, all differ in some way or another. Even those providers whose opinions did mention the need for some kind of support or accommodation in the work environment did not suggest any specific functional limitations, let alone the same functional limitations. Indeed, Dr. Kettel and Ms. Rose, who filled out the same form, are not in compete

agreement as to Plaintiff's functional capacity. Moreover, the fact that these evaluations were conducted for different reasons requires them to be read in different contexts. Dr. Pacella, for instance, was opining directly regarding Plaintiff's functional limitations. Dr. Petrick, on the other hand, did not purport to comprehensively opine as to Plaintiff's RFC. Dr. Emmons was not directly evaluating Plaintiff's ability to work, but rather assessing Plaintiff's level of cognitive functioning and determining any potential deficits that may impede learning, socialization, and behavior. (R. 314).

Further complicating things is the fact that there are, as the ALJ noted, additional opinions in the record pertaining to Plaintiff's ability to work. The state examining agent, Sandra Banks, Ph.D., provided an opinion that Plaintiff had no more than moderate limitations in her ability to perform sustained work activities, which the ALJ generally incorporated into the RFC. (R. 63-73). In addition, medical expert Neli Cohen, Psy.D., who unlike any other opining sources had reviewed the entire record, testified that Plaintiff was not as limited as some of her other medical providers had suggested. (R. 461-83). Neither suggested the need for specialized support at work. In short, the record displays an intricate tapestry of opinions and evidence, each bringing a somewhat different perspective to Plaintiff's functional capacity.

In a situation such as this, it was incumbent upon the ALJ to consider all of the evidence in determining the proper RFC. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); Mays v. Barnhart, 78 Fed. Appx. 808, 813 (3d Cir. 2003); 20 C.F.R. §§ 416.945(a)(3); 416.946(c); S.S.R. 96-5p, 1996 WL 374183 (S.S.A.) (July 2, 1996). Certainly, in making this assessment, the opinions of the claimant's treating physicians generally are to be afforded significant weight. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); 20 C.F.R. § 416.927(c)(2). However, while an ALJ must consider the treating relationship between the claimant and an opining doctor, when the medical opinion of a treating source conflicts with that of a non-treating, or even a non-examining physician, "the ALJ may choose whom to credit." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). See also Dula v. Barnhart, 129 Fed. Appx. 715, 718-19 (3d Cir. 2005). The ALJ, of course, "'cannot reject evidence for no reason or for the wrong reason,'" Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429), and can only give the opinion of a non-treating, non-examining physician weight insofar as it is supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation provided for the opinion. See S.S.R. 96-6p, 1996 WL 374180 (S.S.A.), at *2 (1996). The ALJ did so here, and her findings are supported by substantial evidence.

As discussed, the treating and examining medical treatment providers were far from unanimous in their evaluation of Plaintiff's limitations. To the extent that the ALJ found that any of their findings were not supported by the record, she discussed the basis for her decision. She discussed each evaluation in significant detail and demonstrated a complete understanding of each provider's findings and/or opinions. She actually gave

3

some weight to several of the opinions at issue, including that of Dr. Petrick and that of Dr. Pacella. (R. 447). The opinions to which she gave little or no weight were the checkbox forms completed by Dr. Kettel and Ms. Rose. See Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Indeed, this is not a case in which the ALJ rejected the opinions of the claimant's treating physicians; she simply considered them in light of the evidence as a whole. For example, the ALJ considered that, subsequent to most of these evaluations, Plaintiff had successfully worked, albeit on a part-time basis, had started using public transportation, and had improved in her interactions with others. (R. 446-47). She discussed and considered the objective medical evidence at great length and evaluated the opinions in light of this evidence.

The ALJ further relied on the opinion of the state reviewing agent and the testimony of Dr. Cohen. Not only was Dr. Cohen's testimony far more recent than most of the other opinions in the record, as the ALJ noted, Dr. Cohen was the only opining source who had access to the entire record. (R. 447-48). Plaintiff here, as she did at the hearing, argues that Dr. Cohen's opinion is inconsistent with the other opinions. However, in so asserting, Plaintiff is really arguing that Dr. Cohen's testimony is inconsistent with what she believes to be the meaning of the other opinions. Dr. Cohen had access to these opinions and was capable of giving them her own reading, as was the ALJ (and the Court). It is important to note that the ALJ did not disregard Plaintiff's restrictions in following instructions and dealing with others; she accounted for these limitations. The RFC does not specify the need for any particular type of support system but, as noted, neither really do the various opinions in the record. They suggest limitations for which the ALJ accounted, just not in the way Plaintiff asserts the ALJ should have done so.

All of this constitutes substantial evidence in support of the ALJ's findings and as to the formulation of Plaintiff's RFC, especially in light of the United States Supreme Court's recent reminder that the threshold for meeting the substantial evidence standard "is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). Plaintiff essentially is asking the Court to adopt her own analysis as to how the ALJ should have treated the relevant medical opinions and analyzed the relevant evidence. However, if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently. See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986); Berry, 738 F. Supp. at 944 (citing Cotter, 642 F.2d at 705). It is certainly not unreasonable that Plaintiff would suggest interpretations of the various opinions that are somewhat different than the way in which the ALJ interpreted them. However, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." Malloy v. Comm'r of Soc. Sec., 306 Fed. Appx. 761, 764 (3d Cir. 2009). Moreover, as noted, reasonable minds could certainly differ to how much inconsistency, if any, exists between and among the various reports.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (document No. 9) is DENIED and that Defendant's Motion for Summary Judgment (document No. 11) is GRANTED.

        s/Alan N. Bloch
        United States District Judge

ecf:      Counsel of record

---

Plaintiff has also noted the possible application of Lucia v. S.E.C., 138 S. Ct. 2044 (2018), and Cirko v. Comm'r of Soc. Sec., 948 F.3d 148 (3d Cir. 2020). In Lucia, the United States Supreme Court found an ALJ of the Securities and Exchange Commission assigned to hear enforcement actions to be an "Officer of the United States," subject to the Appointments Clause of the United States Constitution. The Third Circuit Court of Appeals, in Cirko, held that claimants can raise the challenge that ALJs of the Social Security Administration ("SSA") were not properly appointed under the Appointments Clause without having exhausted those claims before the agency where the ALJs had, in fact, not been properly appointed at the time of the claimant's administrative proceedings. However, the Acting Commissioner reappointed the SSA's ALJs under her own authority on July16, 2018. See S.S.R. 19-1p, 2019 WL 1324866 (S.S.A.), at *2 (2019). This case was not remanded back to the Commissioner by this Court until well after that date, on September 26, 2018. (R. 522). Accordingly, ALJ Leslie Perry-Dowdell was properly appointed during the entirety of the administrative adjudication of this case after the Court had overturned her earlier decision. As such, even if the Court were inclined to permit Plaintiff to raise an Appointments Clause argument at this late stage of the proceedings, such a claim would be without merit.

Accordingly, for all of the reasons set forth herein, the Court finds that substantial evidence supports the ALJ's decision and therefore affirms.